Patricia H. BLINCOE, et al., Plaintiffs,

v.

Alfred J. LUESSENHOP,
M.D., Defendant.

Civ. A. No. 86–341.

United States District Court,
District of Columbia.

July 17, 1987.

Francis J. Ford, Ford & O'Neill, Rockville, Md., for plaintiffs.

John J. Buckley, Jr., Williams & Connolly, Washington, D.C., for defendant.

## MEMORANDUM ORDER

JOHN H. PRATT, District Judge.

This action arises from an operation performed by the defendant, Dr. Alfred Luessenhop, on plaintiff Patricia Blincoe in February, 1983. In the complaint, Mrs. Blincoe and her husband allege that Dr. Luessenhop failed to perform the operation with the requisite care, and that he failed to obtain Mrs. Blincoe's informed consent to the procedure.[1] Defendant has moved for summary judgment on both the "informed consent" theory and the theory of failure to meet the standard of care. Plaintiffs oppose entry of summary judgment on the "informed consent" theory, but concede that they have no evidence to show that Dr. Luessenhop did not perform the operation with the requisite care. Because we conclude that summary judgment in favor of

---

1. Ralph Blincoe is also a plaintiff. He sues Dr. Luessenhop for costs incurred in supporting and caring for his wife and for loss of consortium. His claims are contingent upon successful recovery by his wife.

defendant is also appropriate on the informed consent theory of recovery, we grant summary judgment for defendant as to all counts of the complaint.

### Background

Patricia Blincoe suffers from a condition called an arteriovenous malformation (AVM). Def. Stmt. of Material Facts As to Which There is No Genuine Issue (Def. Facts) at ¶ 1. An AVM is the result of a congenital defect of the blood vessels in which the arteries join directly with the veins, without first passing through the capillaries. *Id.* at ¶ 3. When the blood does not pass through the capillaries, the arterial blood pressure is not dissipated prior to the blood entering the veins. *Id.* This elevates the pressure on the walls of the veins, which enlarge, forming the AVM. Mrs. Blincoe's AVM was located in the posterior fossa of the brain, an area which includes the cerebellum and the brain stem. *Id.* at ¶ 1.

Because of the location of Patricia Blincoe's AVM, she was subject to several risks:

1. the AVM could hemorrhage, causing a "stroke";

2. the increased size of the AVM, and the pressure resulting therefrom, may damage surrounding brain tissue;

3. the AVM may trigger seizures by irritating the surrounding brain tissue;

4. because of the enlarged veins and reduced resistance to blood flow through the AVM, the flow of blood through the AVM will increase, diverting blood away from nearby vessels feeding nearby tissue.[2] *Id.* at ¶ 4.

Prior to the time Mrs. Blincoe entered Dr. Luessenhop's care, she had already suffered two hemorrhages of her AVM. The first occurred in 1967 when she was living in Charlottesville, Virginia, and the second occurred in 1982, when she was residing in Raleigh, North Carolina. *Id.* at ¶¶ 6–7. In May, 1982, plaintiffs moved to the Washington area. At that time, Mrs. Blincoe came under the care of Dr. Roger Snyder. *Id.* at ¶ 9. As of May 11, 1982, Dr. Snyder reported that plaintiff had, *inter alia,* a slight hesitancy to speech and a slightly unsteady walk. Def's Mot. for Summary Judgment, Litt Decl. Ex. E. On July 7, 1982, Mrs. Blincoe was again seen by Dr. Snyder, who was contemplating referral to Dr. Luessenhop. *Id.* Dr. Snyder again saw plaintiff in November, 1982 and recommended additional tests. *Id.* He also apparently raised the possibility of embolization with her at that time.

In December, 1982, plaintiff saw Dr. Luessenhop for the first and only time prior to her hospitalization for the embolization procedures.[3] At that time, Dr. Luessenhop claims that he informed both plaintiffs of all the risks and benefits of the embolization procedure and left the decision to the plaintiffs. Mrs. Blincoe does not dispute that the decision was left to her, but states that Dr. Luessenhop told her only that the procedure would be a "piece of cake." Depo. of P. Blincoe at 50–51, 58; Depo. of R. Blincoe at 169. For the purposes of the motion for summary judgment, we assume that Dr. Luessenhop did not explain the risks and benefits to the Blincoes at this meeting. In addition, it must be assumed that Mrs. Blincoe expressed her desire not to have the AVM surgically removed. Depo. of R. Blincoe at 169; Dep. of P. Blincoe at 51–52.[4]

On February 15, 1983, Patricia Blincoe was admitted to Georgetown University Hospital for the embolization procedure. Def's Mot for Summary Judgment, Litt Decl. Ex. A. Patricia Blincoe does not re-

---

**2.** This last effect is known as a "steal." *Id.*

**3.** Some time prior to Mrs. Blincoe's December, 1982 visit with Dr. Luessenhop, Mrs. Blincoe at least tentatively decided that she would have the embolization. Depo. of P. Blincoe at 48.

**4.** Upon review of the deposition testimony of both Patricia and Ralph Blincoe, it is clear that in excluding "surgery," Mrs. Blincoe was not excluding the embolization procedure. The word "surgery," as used at both depositions, clearly referred only to surgical removal of the AVM and did not include the embolization procedure. Depo. of R. Blincoe at 169; Dep. of P. Blincoe at 51–52. Any inference to the contrary does not have a basis in the record.

call the details of her visit, except for a single visit by Dr. Luessenhop during the interval between the first and second embolization procedures. Depo. of P. Blincoe at 65–69. Her husband was not present at the hospital between the time she was admitted to Georgetown University Hospital and the evening after the first embolization procedure. Dep. of R. Blincoe at 89, 94. Prior to her first embolization procedure, Mrs. Blincoe signed a consent form dated February 15, 1983. Def's Mot for Summary Judgment, Camponovo Decl. Ex. B.[5] In addition, a notation in her medical record, signed by Dr. Camponovo, states that the procedure and complications were explained to Mrs. Blincoe. *Id.* at Ex. A. The first embolization procedure was performed on February 16, 1983. Patricia Blincoe suffered no after-effects from the first embolization, other than discomfort.

Between the first and the second embolization procedures, plaintiffs assert that Dr. Luessenhop told Mrs. Blincoe that if a second embolization procedure was done, that Mrs. Blincoe would "never have to worry about [the AVM] again." R. Blincoe Depo. at 94. Again, this must be assumed to be true. On February 17, 1983, Mrs. Blincoe signed another consent form. Def's Mot for Summary Judgment, Camponovo Decl. Ex. D. The medical record for that date also bears a note, signed by Dr. Camponovo, stating that the patient was aware of the complications and understood the procedure. *Id.* at Ex. C.

The second embolization procedure was performed on February 18, 1983. As a result of that procedure, Mrs. Blincoe suffered dysarthria (slurred speech), dysphasia (swelling), and right side dysmetria (weakness). Luessenhop Dep. at 47–48. At the time of her discharge, the medical records show that she had right-sided dysmetria, but speech, gait and eye movement within normal limits. Def's Mot for Summary Judgment, Litt Decl. Ex. B. Mrs. Blincoe was discharged on February 23,

1983. Both Mr. Blincoe and Dr. Luessenhop remember her symptoms as being slightly more severe than described on the discharge summary, but no one asserts that her symptoms reached the magnitude of her problems at the time of her next hospitalization. Luessenhop Dep. at 48–49; Depo. of R. Blincoe at 120. The medical expert testimony by Dr. Luessenhop and Dr. Michelsen indicates that the type of symptoms exhibited by Mrs. Blincoe upon her discharge from Georgetown University Hospital were not unusual after-effects of embolization and usually, but not always, disappear over time. Michelsen Decl. at ¶ 13, Luessenhop Depo. at 52–54.

On March 4, 1983, Patricia Blincoe visited Dr. Snyder, apparently to complain about her symptoms. As memorialized in his letter dated March 14, 1983, Dr. Snyder observed that Mrs. Blincoe had a "hesitancy of speech with a tendency to dysphasia." Pl. Ex. D.[6] He also noted:

> There was mild weakness and slowing of the right eyelid and right stomal angle. She is able to lift the right arm to shoulder height and above the head, but this is done slowly. She postures with the hand. Rapid movements are slowed, tone is increased. There is some difficulty walking on the right foot. Toe tapping is slowed. Deep tendon reflexes are brisk on the right. Toes are downgoing to plantar stimulation.

*Id.* He diagnosed "Evidence of mild right hemiparesis with what appears to be mild dysphasia." *Id.*

On the night of March 4, 1983, Mrs. Blincoe began vomiting, complaining of headaches, and "slobbering." Depo. of R. Blincoe at 142–43. She has testified that she felt something move "in her head." Dep. of P. Blincoe at 90. Although the doctors originally diagnosed her as suffering from a hemorrhage in her AVM similar to the earlier episodes of 1967 and March, 1982, the doctors later concluded that she

---

**5.** In his deposition, Ralph Blincoe authenticated his wife's signature. Dep. of R. Blincoe at 91.

**6.** Although the March 14, 1983 letter refers at one point to a visit that occurred "today," it is

clear from the reference to Patricia Blincoe's "first visit since early December" that Dr. Snyder was referring to the visit of March 4, 1983.

had probably suffered a cerebellar infarct since no hemorrhage was confirmed. Pl. Ex. G. As a result of the March 4, 1983 incident, Mrs. Blincoe suffers from many symptoms that were not present prior to that incident, including serious memory problems, balance problems, seriously dysarthric speech, difficulties in walking and balance. Both Dr. Luessenhop and Dr. Michelsen have submitted affidavits stating that the March 4, 1983 stroke was not a result of the embolization procedure on February 18, 1983. Plaintiffs have submitted no medical affidavits.

## Discussion

To establish a prima facie case in an informed consent action, plaintiff must show:

1. the doctor failed to inform plaintiff of certain risks of the medical procedure, *Canterbury v. Spence*, 464 F.2d 772, 785 (D.C.Cir.1972);

2. the undisclosed risks were "material," *i.e.* the reasonable person, in what the physician knows or should know to be the plaintiff's position, would be likely to attach significance to the allegedly undisclosed risks in deciding to accept or to forego the proposed treatment, *id.* at 787;

3. the prudent person, in the plaintiff's position, would have decided to decline treatment if suitably informed of all perils bearing significance, *id.* at 791;

4. the undisclosed risk actually manifested itself and caused the damage for which plaintiff seeks recovery, *Gordon v. Neviaser*, 478 A.2d 292, 296 (D.C. 1984).

At trial, the plaintiff bears both the burden of production and the risk of non-persuasion on these elements. *Canterbury*, 464 F.2d at 791. Defendant's motion for summary judgment focuses on the third and fourth elements of the prima facie case, *i.e.* the elements of causation.[7]

As the party moving for summary judgment as to elements upon which the non-moving party bears the burden of proof at trial, defendant is entitled to judgment as a matter of law if the plaintiffs cannot make a sufficient showing on an essential element of their case on which they bear the burden of proof. *Celotex v. Catrett*, 477 U.S. 317, —, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Defendant, as the moving party, satisfies its burden of production with respect to the motion for summary judgment either by pointing to parts of the record negating the existence of an essential element of plaintiff's prima facie case, or by pointing out the absence of any support in the record for the existence of the essential element. Once defendant has satisfied his burden, the burden shifts to plaintiffs, as the non-moving parties, to point to portions of the record supporting the existence of the essential element. *Id.* As the non-moving parties with the burden of proof at trial, plaintiffs must "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* quoting Fed.R. Civ.P. 56(e).

## I. *Medical Causation*

There is no dispute, at least for the purposes of this motion, that Patricia Blincoe suffered some neurological deficits as a result of the February 1983 embolization procedures. Clearly, if she can establish the other elements of her prima facie case and if defendant establishes no defenses, she would be entitled to recover for her immediate post-operative deficits. The major issue, however, is whether she can recover at all for her March 4, 1983 "stroke" and the physical and emotional damages stemming therefrom.

▐ To establish the medical fact of the causal link between Mrs. Blincoe's March 4, 1983 "stroke" and the embolization procedures, plaintiffs must proffer medical testimony, *see Canterbury*, 464 F.2d at 792, unless the doctrine of res ipsa loquitur

---

7. Defendant also argues that he had no duty to disclose the risk of cerebellar infarct resulting from a shift in the embolization pellets, since plaintiff's deposition indicates that she had contemplated the risk. We do not believe that

plaintiff's generalized speculation of a possible risk is the same as definite and particular knowledge. As such, we conclude that summary judgment on this ground would be inappropriate.

applies. Res ipsa loquitur, however, only applies to the consequences of professional treatment if such consequences would not ordinarily occur in the absence of the allegedly culpable conduct. *Quin v. George Washington University*, 407 A.2d 580, 583 (D.C.1979). In this case, because a cerebellar infarct could ordinarily be suffered as a result of a cause unrelated to the embolization procedure, as well as from an embolization pellet, res ipsa loquitur is inapplicable. As a consequence, plaintiff must adduce some medical proof of causation.

■ Defendant has satisfied his burden of production with respect to the motion for summary judgment. Defendant has provided affidavits by Dr. Yost Michelsen and Dr. Luessenhop which state, to a reasonable degree of medical certainty, that the March 4, 1983 incident was not caused by the embolization. Luessenhop Decl. at ¶ 2; Michelsen Decl. at ¶ 14. Defendant, in addition, points out the fact that plaintiffs have no medical experts of their own upon which to rely.

In their opposition, plaintiffs do no more than assert that a pellet blocked a normal blood vessel and that this infarct caused the present neurological deficits. Plaintiffs refer the court to no portion of the record indicating a causal link between the February embolizations and the March 4 "stroke." [8] This court, in addition, can find no medical evidence in the medical records, the depositions or the affidavits establishing a causal relationship between the February embolizations and the stroke of March 4.[9] Without any competent medical evidence to establish a causal link, we must conclude as a matter of law that no causal relationship exists between the February embolizations and the March 4 stroke.

## II. *Decisional Causation*

Even as to those neurological deficits stemming from the February embolizations,[10] plaintiffs must still present some evidence that the alleged non-disclosure of a material risk in fact induced Mrs. Blincoe to submit to treatment that the suitably informed, reasonably prudent person in her position would have declined. If Mrs. Blincoe, at some time after her visit with Dr. Luessenhop but prior to the embolization procedures, actually consented to the procedure after being fully informed of the risks, any causal chain between the December 1982 visit with Dr. Luessenhop and the subsequent operations would be broken.

In support of its motion for summary judgment, defendant has produced two signed consent forms, two notes in Patricia Blincoe's medical records signed by Dr. Campanovo indicating that Dr. Camponovo had explained the "procedure" and "complications" to Mrs. Blincoe, and an affidavit by Dr. Camponovo attesting to his usual practice for obtaining consent. These documents satisfy defendant's burden of pointing to portions of the record either negating an element of plaintiffs' affirmative case or indicating an absence of evidence supporting plaintiffs' affirmative case. The burden of productions shifts to plaintiff: plaintiff must adduce some evidence to show that Mrs. Blincoe did not give her informed consent to Dr. Camponovo on either February 15 or February 17.

■ Plaintiffs, however, have no evidence to offer. They do not challenge the authenticity of the consent forms and medical records or of Mrs. Blincoe's signature. Mr. Blincoe was not present at the hospital during the critical discussions. Mrs. Blincoe's deposition testimony indicates that she has no independent recollection of any

---

8. The portions of Dr. Luessenhop's deposition and Ex. M. to Plaintiff's Opposition, all of which is cited in plaintiffs' statement of genuine issues to support the proposition that Mrs. Blincoe's present neurological deficits stem from the embolization procedure, do not help plaintiffs. None of these items deals at all with the issue of the causal relationship between the embolizations and the March 4 stroke.

9. Mrs. Blincoe's statement that she felt something move "in her head" immediately prior to suffering the March 4 "stroke" is not medical evidence sufficient to establish medical causation.

10. At this time, we make no attempt to segregate those present neurological deficits stemming from the February embolizations, from those stemming from the March 4, 1983 "stroke."

events between her admission to Georgetown and the evening after her first embolization. Plaintiffs are left with only an inference, drawn from Mrs. Blincoe's inability to recall that her discussions with Dr. Camponovo did not occur.

The question arises whether, in light of *Celotex* and *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the inference that discussions did not occur is sufficiently probative to create a genuine issue of material fact. *See id.* at ——, 106 S.Ct. at 2511. To create a genuine issue, the plaintiff's proof must be sufficient to allow a jury properly to proceed to find a verdict for the plaintiff. *Id.* In the face of documentary evidence to the contrary, we cannot conclude that a jury could properly find a verdict for the plaintiff. This would be a different case if the deposition testimony showed that Mrs. Blincoe had some independent recollection or if Mrs. Blincoe affirmatively denied that the conversations took place. Instead, Mrs. Blincoe's deposition clearly reflects only that she has no knowledge of events during the crucial period. A jury verdict for the plaintiff, based on the evidence adduced here, could only be the result of sheer speculation, with no grounding in the record. Thus, summary judgment for defendant is appropriate.

### Conclusion

This is an unfortunate and even tragic case. Plaintiffs have endured much physical suffering, as well as dashed hopes. Unfortunately for plaintiffs, the law does not permit them to recover from Dr. Luessenhop in the absence of evidence showing that Dr. Luessenhop's alleged non-disclosure resulted in Mrs. Blincoe's undergoing a procedure she would not reasonably have undergone otherwise, and that as a result of the procedure Mrs. Blincoe has suffered her present neurological deficits. Without such proof, summary judgment for defendant Dr. Luessenhop must be granted.

ORDERED that defendant's motion for summary judgment is granted, and it is

FURTHER ORDERED that final judgment be entered in favor of defendant.