**MAANAIMA LANG, individually and
as Administrator of the ESTATE OF SILIAGA LANG,
and as Guardian for NELLY LANG, a Minor, Plaintiff,**

v.

**AMERICAN SAMOA GOVERNMENT, Defendant.**

High Court of American Samoa
Trial Division

CA No. 13-91

November 24, 1997

Before RICHMOND, Associate Justice, TAUANU`U, Chief Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Plaintiff, Cherie Shelton Norman
 For Defendant, Henry W. Kappel, Assistant Attorney General

OPINION AND ORDER

### Introduction

This action was originally brought against defendant American Samoa Government ("ASG") and Hawaiian Airlines. The court granted summary judgment in Hawaiian Airlines' favor. The case against ASG then proceeded to trial as a medical malpractice cause of action.

Siliaga Lang ("Siliaga"), now deceased, was the wife of plaintiff Maanaima Lang ("Lang"), and the mother of plaintiff Nelly Lang. At the time of her death, Siliaga was 34 years old.

Siliaga's medical history shows that she was treated for cancer at the University of Washington in 1986. Between October 1988 and February 1989, Siliaga was treated several times as an outpatient at ASG's LBJ Tropical Medical Center ("LBJTMC"). She was treated for abdominal pain, urinary tract infection, increasing fatigue and anemia related to hydronephrosis and mild renal insufficiency, both kidney dysfunctions. She was hospitalized on February 8, 1989 due to severe shortness of breath and mild to moderate dehydration. David L. Stevig, M.D., Siliaga's

149

principal physician at that point, directed blood tests, an ultrasound test, x-rays, and an electrocardiogram. These tests showed mild insufficiency of Siliaga's kidneys and some enlargement of her heart, but did not reveal the underlying causes of Siliaga's medical condition. Dr. Stevig therefore arranged to have Siliaga transferred to Tripler Army Medical Center ("TAMC") in Hawaii for more comprehensive evaluation and treatment. His instructions for Siliaga's transport included a nurse escort. Dr. Stevig saw Siliaga the morning she was transferred to TAMC. She had experienced vomiting and nausea in the night, so Dr. Stevig prescribed Compazine, an anti-nausea drug, to treat this problem should it occur en route.

On February 13, 1989, Siliaga was transported to the airport in an ambulance and boarded the aircraft to Honolulu. Throughout the journey, she had an intravenous line ("IV") attached and was using supplemental oxygen. She was accompanied by a nurse and Lang. Approximately one hour away from Hawaii, Siliaga appeared to become sick. The nurse then administered Compazine through Siliaga's IV. Within a short time after the administration of the drug Siliaga began kicking and screaming and asking for more oxygen. Soon she stopped breathing and went into cardiac arrest. At this point other medical personnel traveling on the plane came to assist Siliaga, using cardiopulmonary resuscitation ("CPR"). They continued with CPR until the plane arrived in Hawaii, where an emergency medical team took over and transported Siliaga to the emergency room at TAMC. Attempts to revive Siliaga continued at TAMC until she was pronounced dead later that day.

### Discussion

 To establish a cause of action for negligence a party must prove duty, breach, causation, and damages. *See, e.g.,* William L. Prosser, *The Law of Torts,* 39, at 143-44 (4th Ed. 1971). In a suit for injuries caused by alleged malpractice, the burden is on the plaintiff to prove by a preponderance of the evidence the recognized standard of medical care in the community, that there was a lack of reasonable and ordinary care or skill on behalf of the medical professional, and that the medical professional's negligence was the proximate cause of the injury. *See, e.g.,* 61 Am. Jur. 2d, *Physicians, Surgeons, Etc.,* 329-332. Injury, death, or an otherwise unsuccessful result of treatment does not itself shift the burden of proof, nor does it give rise to an inference of negligence. *Id.*

### I. Duty

 In a medical malpractice action, the duty of a medical professional is to act with the standard of care ordinarily exercised under the same or similar circumstances by members of the profession in the same or similar communities. *See Portillo v. United States,* 816 F. Supp. 444, 447.

150

(W.D.Tex. 1993); *East v. United States*, 745 F. Supp. 1142, 1149 (D.Md. 1990); *Sewell v. United States*, 629 F. Supp. 448, 455 (W.D.La. 1986). The burden is on the plaintiff to prove by a preponderance of the evidence the recognized standard of medical care. The only evidence produced at trial on the issue of the applicable standard of care came through the Dr. Stevig's deposition in evidence and the testimony of Iotamo Saleapaga, M.D.

According to Dr. Stevig, it was reasonable to use Compazine on Siliaga to treat any possible nausea. He also stated that the treatment of Siliaga was commensurate with the standard of care in American Samoa. Dr. Saleapaga concurred with Dr. Stevig. Although Dr. Stevig would have laid Siliaga flat and raised her feet upon the onset of the apparent reaction to Compazine, he stated that he would not expect someone who is not a physician to undertake the same treatment. There was no evidence presented as to whether it was unreasonable for the physicians not to include instructions to the nurse on procedures applicable to, and possible adverse reactions to, Compazine.

Moreover, there was no evidence generally on the applicable standard of care for the accompanying nurse. Instead of presenting evidence on this issue, plaintiffs merely argues that a reasonable nurse should have known how to treat an adverse reaction to Compazine. Although there is some indication that this might be the case, that slight indication falls far below the preponderance burden which the plaintiff carries. Plaintiffs should have presented evidence on the standard of care for a nurse in American Samoa in relation to the administration of Compazine. Plaintiffs failed to do so. This court therefore is left without a barometer with which to measure the reasonableness of the nurse's conduct.

II. Breach

Unless it is proved otherwise, a physician is presumed to have carefully and skillfully treated his patient. As stated above, the only evidence in the record indicates that the initial prescription of Compazine for the treatment of possible nausea was reasonable under the circumstances. Without more evidence on this issue we find that plaintiffs have failed to meet their burden of showing breach of the physicians' duty of care by a preponderance of the evidence.

Further, as mentioned above, plaintiffs failed to offer testimony on the applicable standard of care for a nurse in this locality, both as to the standard of care required when accompanying a passenger generally and the standard of care required when administering Compazine. Since plaintiffs have failed to adequately provide this court with the applicable standard of care, we cannot determine whether that duty was breached on the part of the accompanying nurse. We again find that plaintiffs have failed to meet their burden.

151

III. Causation

■ Plaintiffs must proffer either medical evidence or the basis for the application of the doctrine of *res ipsa loquitur* to establish a causal link between Siliaga's death and ASG's actions. *Res ipsa loquitur* is applicable when (1) the event is of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; (3) it was not due to any voluntary action or contribution on the part of the plaintiff. *See Lang v. American Samoa Government*, 24 A.S.R.2d 59, 61 (Trial Div. 1993). *Res ipsa loquitur* "applies to the consequences of professional treatment if such consequences would not ordinarily occur in the absence of the allegedly culpable conduct." *Blincoe v. Luessenhop*, 669 F. Supp. 513, 516 (D.D.C. 1987), citing *Quin v. George Washington Univ.*, 407 A.2d 580, 583 (D.C. 1979).

■ Here plaintiffs assert that the *res ipsa loquitur* doctrine is applicable due to the fact that Siliaga died after being given the Compazine. Plaintiffs assert that it is more likely than not that Siliaga's death was caused by negligence. However, as Prosser explains, the mere fact that an injury occurred is not evidence of negligence. *See* Prosser, *supra*, 39, at 211. *See also Blincoe*, 669 F.Supp. at 517 (*Res ipsa loquitur* was inapplicable in a medical malpractice action brought by a patient who had suffered a cerebellar infarct after undergoing certain treatment procedures because the cerebellar infarct could be suffered as a result of a cause unrelated to the treatment procedures); *Garrett v. United States*, 667 F. Supp. 1147, 1163 (W.D.La. 1987) (*Res ipsa loquitur* cannot apply where the patient's adult respiratory distress syndrome, kidney failure and multiple organ system failure can occur in the absence of someone's negligence). Expert testimony is indispensable in determining whether negligence occurred. *See* Prosser, *supra*, 39, at 227. Plaintiffs presented little evidence on this issue.

Siliaga was a very sick woman, with possible problems which could not be treated or diagnosed at LBJTMC. This is the reason she was being transported to Hawaii. Compazine had been previously prescribed to Siliaga (though it is not apparent whether she ever used the prescription). Although there is some evidence which suggests that Compazine should not have been given, that evidence is insufficient to meet plaintiffs' burden. We do not find that Dr. Stevig's prescription or the nurse's administration of Compazine was inherently negligent. Moreover, we find it very troubling that plaintiffs failed to put on the nurse as a witness, or explain her absence. The nurse has significant first-hand knowledge of the entire chain of events.

152

Without this and other evidence, we find that the doctrine of *res ipsa loquitur* is inapplicable to the case at bar.[1]

 Because *res ipsa loquitur* is inapplicable, plaintiffs must produce some medical proof of causation. *See, Blincoe,* 660 F. Supp. at 517. Plaintiffs have failed to produce this evidence. There was no autopsy performed on Siliaga. The death certificate stated the cause of death as cardiac arrest due to, or as a consequence of, pericardial effusion due to, or as a consequence of, renal failure. The Honolulu medical examiner, however, stated the cause of death as cardiomyopathy. Finally, Dr. Stevig stated that he believed the cause of death was cardiac arrest, caused by a drop in blood pressure and unknown underlying conditions, not pericardial effusion or renal failure. "If the trier of fact can do no more than speculate as to which of several possible causes was the actual cause of the injury in question, the Defendant is entitled to judgment in its favor." *Portillo v. United States,* 816 F. Supp. 444, 447 (W.D.Tex 1993). We find that plaintiffs have failed to meet the burden of proof regarding causation.

IV. <u>Damages</u>

Because plaintiffs have been unable to establish the first three elements of a cause of action for negligence, we do not need to address the fourth element of damages.

## Conclusion

We find that plaintiffs have failed to meet the burden required to establish a standard of care owed to them, the breach of that standard, or a causal connection between Siliaga's death and ASG's actions. The doctrine of *res ipsa loquitur* is not appropriate under the facts presented at trial.

Judgment is for ASG.

It is so Ordered.

---

[1] Even if the doctrine of *res ipsa loquitur* were applicable, it merely establishes a permissive inference of negligence which the fact finder is not required to adopt. *Iosia v. National Pacific Insurance Ltd.,* 20 A.S.R.2d 123, 124 (Trial Div. 1992).